JOHN D. PAHLMAN, Executor, etc., *et al.*, Plaintiffs in Error, *v.* WILLIAM R. SMITH, Defendant in Error.

### ERROR TO COOK.

Where two persons are, by will, empowered to sell real estate as executors, and not as trustees, and one of them refuses to act, the other may, as sole executor, exercise the power in the same manner as both might have done if both had qualified.

A construction given to the words of the will in this case.

JOHN D. PAHLMAN as executor of the will of Asher Rossiter, made a contract with the defendant, Smith, to sell him certain property devised by the testator.

The plaintiff made and tendered the deed to defendant, in accordance with the terms of the contract, but defendant

refused to pay the stipulated price, on the ground that the plaintiff could not convey a good title to the property; whereupon the plaintiff brought his bill in the Superior Court of Chicago, to compel performance of the contract.

A demurrer to the bill was sustained by the court, and the bill dismissed. The remaining facts will be found in the opinion.

SCATES & RUCKER, for Plaintiffs in Error.

WILLIAM R. SMITH, *pro se.*

WALKER, J. This record presents the question, whether the last will and testament of Asher Rossitter, deceased, confers the power on John D. Pahlman, his sole executor, to sell and convey real estate of the testator, for the payment of debts of his estate. By the will, Pahlman and one John B. King were named executors. The will was duly proved, and admitted to record, and letters testamentary were granted to Pahlman. The will, amongst others, contained these provisions: He first appoints Pahlman and King his executors, and then proceeds, " I give and devise all my messuages, lands and tenements, wheresoever situate, unto John Pahlman and John B. King, and their heirs, and the heirs of the survivors of them, to have and to hold the same to the uses following, to wit: to the use of them, the said John Pahlman and John B. King, executors, and the survivor of them, and his heirs, for and during and until the time when my youngest child, Charles D. Rossitter, shall arrive at the age of maturity, or twenty-one years of age, and then, and from thenceforth, the said King and Pahlman shall cease to exercise any further control over the same ; but the title to all my said lands and tenements, shall then vest absolutely in my said children, subject, however, to the following condition :

" That the said Pahlman and King shall, upon my daughter, Mary S., coming of age, or in case she shall marry before arriving at the age of maturity, then, and in either case, they, the said executors, shall give and set over to her, or to her husband, in case she marries, from and out of my estate such an amount as they, the said King and Pahlman, shall deem a third of the property left by me at my decease, both real and personal. As also upon my son, George W. Rossitter, coming of age, then said King and Pahlman shall, in like manner, set off to him so much of my estate as they shall consider equivalent to one-third of the property left at the time of my death. And when my youngest son, Charles Decatur Rossitter, shall come of age, then the said King and Pahlman shall set over to him as much

29

as each of my other said children shall receive ; and if there shall be anything remaining after such distribution, arising from rents and profits, or in any other way, from my real or personal estate, it shall be divided equally between my said children and their heirs ; and in case of the death of any one or more of my said children without heirs, before arriving at the age of maturity, then, and in that case, their portion of my estate, to which, by the provisions of this will, they would be entitled, either real or personal, shall go to and be divided equally between survivors or survivor of them." * * * *

" And the freehold which I have devised to the said King and Pahlman, and the survivor, for and during and until the maturity of all my said children, is upon the especial trust following, to wit: That they, the said King and Pahlman, and the survivor of them, shall, during the continuance of the said estate, take and receive the rents and profits accruing from the messuages, lands and tenements aforesaid, and therewith make all necessary repairs, pay all taxes, and all other necessary charges and expenses in and about the same, and after all such payments are deducted, shall, in their discretion, pay over the residue of said rents and profits to my said children in equal proportion, or shall use the same for the maintenance, education and support of my said children, as they, the said King and Pahlman, or survivor, may deem proper and expedient. Subject, however to this condition : That before the payment of said residue to my said children, they, the said King and Pahlman, shall pay to my wife, Martha A. Rossitter, instead and in place of her right of dower, the annuity or yearly rent of one thousand dollars, each and every year, during the term of her natural life. And the said annuity or yearly rent shall be paid to my said wife in four equal, quarterly payments, on the first day of January, and on the first days of May and September in every year ; the said payment to begin and to be made on such of said days as shall next happen after my decease. And I do further authorize and empower the said King and Pahlman, my executors, and the survivor of them, in case my personal estate shall be insufficient to pay my just debts and incidental charges, as also the annuity for my said wife, and support of my said children, to sell and convey in fee simple, or for a less estate, and for such price as they may judge expedient, such parts of my messuages, lands and tenements aforesaid, as may be necessary for that purpose, and the proceeds of such sale to appropriate thereto ; and further, the receipts in writing of my said children or wife, to the said Pahlman and King, for any sum or sums of money paid them by virtue of this will and testament, shall be a good and sufficient discharge unto them, and every of them therefor."

Whatever difficulties may be presented to giving a construction to all of the provisions of this will, it is clear that the testator did intend to give the power to the persons named as executors to sell and convey his real estate for the payment of his debts, to raise the annuity for his wife, or for the support of his children. But whether he intended that they should exercise it in their capacity of executors, or as trustees, may not be so clear. We conceive that it can make no difference whether they took an estate in fee, a qualified fee, a term of years until the youngest heir arrived at age, or a naked power to sell, as the power to sell is clearly given. The language will admit of no other construction. If they took any estate under the will as trustees, this provision was designed to enable them to execute the trusts declared. If they took no estate under the will, this provision conferred the naked power to sell for the purposes enumerated, when it should become necessary. He, in the first clause, appoints Pahlman and King his executors, and then he gives and devises to them and the survivor of them, and their heirs, his real estate, to the use of them, naming them executors, and the survivor of them and his heirs, until his youngest child shall come of age. He then, in different portions of the will, requires " the said John Pahlman and John King," and the survivor, to perform specified duties, without naming them executors. But he again, in the last clause, empowers " the said King and Pahlman, my executors, and the survivor of them," in case his personal property should be insufficient to pay his debts, to sell his real estate for that purpose. He here names them his executors, and not trustees, and from that fact, and that they had been by name appointed his executors, it is a reasonable inference that he intended that the power should devolve upon them as executors, and not as trustees. The office of an executor embraces the powers and the duties of a trustee, and that the testator declared a trust does not imply that they must, as trustees, unite in a conveyance to pass the title, unless it would be required of executors. It is true, that in making this devise, it is to them and their heirs, and the heirs of the survivor; but he no where in the will confers any power on their heirs to perform any act. The authority to dispose of the property is limited to them, and to the survivor. As the heirs could not, under the law, perform the duties of an executor, and might that of a trustee, if so empowered, and failing to confer upon them such power, it would seem that the testator intended to confer this power upon his executors as such, and not as trustees. Had the power to sell been conferred upon them, the survivor, and the heirs of the survivor, then there would have been a trust created in the heirs of the executors,

and it would have indicated an intention to confer the power upon them as trustees. Had he associated any person not an executor with them, in the power to sell, there could have been no question of his intention that they should act as trustees, and not as executors. It would have indicated that the testator relied upon their judgment and discretion when acting together, while in this case that intention is negatived, by his conferring on them, and the survivor, the power to act, which manifests an intention that they should act as executors in making the sale and disposition of the property.

Then, if this power was conferred upon them, as executors, has the plaintiff in error the power, without the action of King, to convey real estate for the payment of debts? In other words, has he the power, as sole executor, to execute this will? There can be no question that the power was conferred upon the two, and upon the survivor, and we have seen that they were empowered as executors, and not as trustees. If King were not living, there would be no doubt of the power; but it is suggested that, as he filed his renunciation and refusal to act, in the probate court, before the appointment of Pahlman, he has no power to execute this trust created by the will. This court, in the case of *Clinefelter* v. *Ayres*, 16 Ill. R. 329, held, that, by the 1st sec. of chap. 62, R. S., 1845, the 21 Hen. 8, chap. 4, is in force in this State. By that enactment, it is provided that, if any or either of the persons named as executors in the will, shall refuse to act, the right and power shall devolve upon those who shall qualify, to execute the will in the same manner as all could have done. In this case, King filed his renunciation and refusal to act as an executor, under the will, and complainant did qualify, and under the provisions of that statute, he became fully invested with all the powers that could have been exercised by both, had they qualified. This being the case, he could, when it became necessary to sell real estate for the payment of debts, without the concurrence of, or any action with King, sell and convey real estate for that purpose. The bill alleges that it has become necessary to make such a sale to pay the debts, for the want of personal assets, and the truth of this allegation is admitted by the demurrer. If these allegations were true, the complainant had power to sell for that purpose, and the court erred in sustaining the demurrer, and dismissing the bill.

The decree of the court below is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*